PAUL MAILANDER and SOPHIE MAILANDER

v.

OTTO PLUCKTHUN.

[Decided May 6th, 1914.]

In a suit by the vendors against the vendee to compel the surrender and cancellation of the deed, a reconveyance of the property, and the cancellation and surrender of the promissory note given by the vendors to the vendee, evidence *Held* to show that the vendors were induced to part with the property and their note, upon false representations made by the vendee, and that a decree will be made providing for a rescission of the contract, the reconveyance of the complainants' property, and the surrender and cancellation of their note.

*Mr. J. Emil Walscheid,* for the complainants.

*Mr. Alberico O. Ciccarelli,* for the defendant.

LEWIS, V. C.

The bill filed in this cause prayed that a certain deed made by the complainants to the defendant be surrendered and canceled, and that the defendant be required to convey back the lands described in it, and also be compelled to cancel and surrender a certain promissory note given by the complainants to the defendant.

The complainants, on October 20th, 1912, were the owners of certain lands in the township of North Bergen, in the county of

Hudson, upon which they lived in a one-family house. The husband, Mailander, conducted a stationery store in Hoboken. At the time of the making of the deed the defendant had known the complainants for a period of about three years, having been in the habit of often coming into the store. He was a barber and worked about two blocks from the complainant's place of business. The defendant, on October 20th, 1912, went to the Mailander store and informed Mailander that he had money for sale and wanted to know if he, Mailander, took advertisements for newspapers. Upon receiving an affirmative answer, he then explained that he had a bond and mortgage which he desired to sell, and Mailander told him he had a friend to whom he might be able to sell it, and if Pluckthun would bring the bond and mortgage to him, Mailander would take them to his party in New York and would try to sell them for him. Pluckthun brought the bond and mortgage and Mailander took them to New York in an attempt to sell them for the defendant. About two weeks later the party to whom Mailander had taken the bond and mortgage called upon Pluckthun, and on the evening of this day the defendant came to the store of the complainants and told them that he had met the man from New York; that he had desired to search the property and had requested the defendant to pay the money to cover the expenses of the search, but that he, the defendant, could not see why he would want to search the property; that it was not necessary as he had only had the property for two weeks and had a search before he took it. The defendant thereupon suggested to the complainants that they should buy the bond and mortgage, and told them that he had the mortgage papers at court and that if it were a bad mortgage he would never have taken it; that the complainant Mailander could never get into any trouble over it; that everything was all right; that the property covered thereby was adjacent to a car line in North Bergen; that it was a ten-room two-story brick building with all improvements in it, renting for thirty to thirty-two dollars per month; that it was then rented, and it was so situated that anyone desiring to go into business could easily put a store in the basement of it; that the property was located in a good section; that the owner of the property was a rich contractor and there

was nothing against the property besides defendant's mortgage excepting a first mortgage for $3,000, on which all interest had been paid up to date, and that the property was worth the sum of $4,800; that the taxes against the property had been paid, and that it was clear, excepting for the two mortgages just mentioned; that he had just had the whole thing searched two weeks ago and complainants could take his word for it.

The complainants, upon these representations, thereupon agreed to exchange their equity in their home, plus the sum of $200, for this bond and mortgage, without examination of title or of the property securing the bond and mortgage, and the transaction was completed.

Three or four days after the exchange, the complainants were warned that the mortgage which had been given to them by Pluckthun was a bad mortgage, and that there was a foreclosure in sight and a couple of years interest and taxes to pay on it, and that the real owner was not known. The complainant Mailander called upon the defendant and informed him of what he had heard, and said that if it was true, he was going to try to get his property back, at which the defendant laughed and said, "You can do as you like."

A short time afterwards the complainants, upon further investigation, found that the property covered by this bond and mortgage was located on the side of a hill, fifteen minutes walk from where it was supposed to be located. There were no sidewalks on the street, no gutters, nor was the street curbed. The house was empty and the complainants could not get in it; they were told that it had not been rented for a good while. The agent in charge of the tract of land upon which the building was erected told them that foreclosure proceedings against the property were then pending. The building upon the lot covered by the mortgage was a portion of a double-brick building. Mailander, with this information, immediately called upon Pluckthun and told him that he had misrepresented the matter and he ought to take his property back. Pluckthun refused.

It was further discovered by the complainants that at the time of the exchange taxes for the three preceding years were in arrears and unpaid; that the land upon which the building was

erected was assessed for $200 and the building at $3,000; that the rental value of the property was from twenty-two to twenty-three dollars per month, and that the property would not exceed in value $3,000 at the time of the exchange. The first mortgage for $3,000 against the property had been placed May 20th, 1908. It carried interest at six per cent. Interest for one year only, up to May 20th, 1909, had been paid, and there was three years' interest due on the 20th day of May, 1912. Interest for three years and five months appears to have been due when the exchange was made. The mortgagee, in 1912, foreclosed this mortgage and bought in the property at foreclosure sale. When he placed his mortgage he valued the lot at $400 and the building at $3,300, making a total valuation of $3,700.

The testimony developed the fact that one Kennedy had loaned to the builder the sum of $500, taking a second mortgage upon the lot covered by the Pluckthun mortgage. This mortgage for $500 had in turn been used as collateral security with the bank to secure the payment of a loan less in amount than $500 and had been assigned as security for this loan to one Adelberg, who in turn assigned the same to Elizabeth Carey. Elizabeth Carey foreclosed the $500 mortgage and bought in the property under the foreclosure sale, and then made a deed to one Steer and took back the $1,500 bond and mortgage from Steer, which she in turn assigned to Pluckthun. Miss Carey testified that she received nothing from Steer either after giving him the deed or on account of the mortgage. She was acting as a dummy for her brother.

In giving his evidence, the defendant admitted that he described the mortgage as a mortgage on a two-family brick house in his dealings with the complainants. He stated that he acquired the bond and mortgage in an exchange in which he gave a lot in Middlesex county valued at $125. Upon this lot he said he had erected by day labor a house which had cost him between seventeen and eighteen hundred dollars, and upon which there had been placed a first mortgage of $800. He made the exchange in October, 1912, without making any examination of the title and without having seen the property covered by the bond and

mortgage, and without having shown to the Careys the property which they were acquiring in exchange for this mortgage. He testified that he had made no inquiries of the Careys as to the past due taxes, assessments or interest on mortgages when he made the exchange, and didn't know anything about those things. He never saw Elizabeth Carey, the person from whom the mortgage was assigned to him, and had no dealings whatever with her; that when he made the exchange with the complainants he had not even seen their property.

There is no doubt in my mind that the complainants were induced to part with their home in the township of North Bergen and their note upon false representations made by the defendant, and I shall advise a decree providing for a rescission of the contract, reconveyance of the complainants' property, and the surrender and cancellation of their note. *Turner* v. *Houpt, 53 N. J. Eq. 526; Straus* v. *Norris, 77 N. J. Eq. 33; Eibel* v. *Von Fell, 55 N. J. Eq. 670.*